```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

DEREK WAYNE SHIKLES,

                Plaintiff,

vs.                                      Case No. 15-1195-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

                        MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 24, 2014, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 19-31). Plaintiff alleges that he had been disabled since August 1, 2009 (R. at 19). Plaintiff meets the insured status requirements for social security disability benefits through June 30, 2011 (R. at 21).

4

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since August 1, 2009 (R. at 21). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22). After determining plaintiff's RFC (R. at 23), the ALJ found at step four that plaintiff has no past relevant work (R. at 29). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 29-30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30-31).

**III. Did the ALJ err in her evaluation of the medical source opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical

source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

    A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Rosalind Rush was plaintiff's treating physician. She opined on March 20, 2013 that plaintiff had numerous physical and mental limitations which, in her opinion, precluded plaintiff from working a full-time job. She indicated that plaintiff could sit for less than 1 hour in an 8 hour workday, and could stand/walk for less than 1 hour in an 8 hour workday. She also indicated that plaintiff would not be able to maintain his attention, focus and concentration for 20% of work hours,

and that his medication would prevent "on task" work concentration and production 20% of the time (R. at 562).

The ALJ gave little or no weight to the opinions of Dr. Rush.  The ALJ found that her opinions were inconsistent with the medical records.  The ALJ asserted that objective evidence in the form of x-rays and an MRI do not substantiate the limitations set forth by Dr. Rush (R. at 26).

X-ray testing in August 2012 indicated that the lumbar spine showed no signs of acute fracture or dislocation of the lumbar vertebrae; mild degenerative disc space was noted at L1-L2 and L5-S1; the disc space heights were otherwise preserved.  The pedicles appeared intact, the facets were aligned, and the apophyseal joints were maintained (R. at 622).  X-rays of the knees in September 2009 were negative for bony abnormality involving both knees (R. at 383).

An MRI performed in August 2012 stated that the survey evaluation did not reveal distinct evidence of active pathology, and the bony structures showed no acute pathology.  Mild disc degeneration was noted at T1-T2, but no stenosis; no disc herniation, encroachment or stenosis was found at L1-L2; no disc herniation, encroachment or stenosis was found at L3-L4, but there was a suggestion of mild facet arthritic change; L4-L5 showed no disc herniation, but mild arthritic change was noted with thickening and mild spinal canal stenosis, which was not

8

significant; L5-S1 found no disc herniation, neural foraminal encroachment or spinal canal stenosis (R. at 586).  Even Dr. Rush stated that plaintiff's MRI was relatively normal, with incidental findings only (R. at 721).  The ALJ cited to these medical test findings in her decision (R. at 26, 25).

The ALJ also noted that Dr. Rush terminated plaintiff's treatment in June 2013 (R. at 26).  The medical records indicate that plaintiff had missed a 30 day mark, as requested, his MRI findings were relatively normal, and there was a report of stolen medication and multiple acute injury visits; these findings led Dr. Rush to disengage with the patient (R. at 721).  The ALJ wondered whether Dr. Rush had come to question plaintiff's credibility.  The ALJ found that Dr. Rush's opinions, based largely upon plaintiff's reported symptoms, were not very persuasive (R. at 26).

The ALJ instead gave great to the reports from two medical consultants, Dr. Bartlow, in regards to plaintiff's physical limitations, and Dr. Gerhart, a psychologist, in regards to plaintiff's mental limitations (R. at 27).  Dr. Bartlow's report, dated July 27, 2013 is a 6 page narrative report reflecting an examination of the patient and a review of the medical files, with 3 pages of medical findings, and a 6 page physical RFC report (R. at 762-777).  The ALJ's physical RFC

findings largely reflect the opinions of Dr. Bartlow (R. at 23, 766-767).

Dr. Gerhard's report, dated June 28, 2013, includes a 2 page mental RFC report, and a 4 page narrative report based upon a mental status examination and a review of the medical file (R. at 749-756). The ALJ's mental RFC findings largely reflect the opinions of Dr. Gerhard (R. at 23, 749-750).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ relied on the consultative examinations and reports of Dr. Bartlow and Dr. Gerhart, who examined plaintiff, reviewed the medical records, and provided a detailed narrative in support of their findings. By contrast, the report from Dr. Rush was only one page, with very little narrative explanation. The ALJ legitimately discounted the opinions of Dr. Rush based upon x-rays and MRI test results showing relatively mild problems with the lumbar spine and no bony abnormality with the knees. A treating physician's opinion can be rejected if it is brief, conclusory, and unsupported by medical evidence. Williamson v. Barnhart, 350 F.3d 1097, 1099 (10th Cir. 2003); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). However, it is not clear from the record whether Dr. Rush came to question plaintiff's credibility, or whether her opinions were based largely upon plaintiff's reported symptoms, as argued by the ALJ.

The court will not reweigh the medical evidence regarding plaintiff's RFC. The conclusions of the ALJ regarding the relative weight accorded to the medical opinion evidence are reasonable, and the ALJ's RFC findings are supported by substantial evidence. Although the court has some concern about some of the reasons for discounting the opinions of Dr. Rush, as noted above, the court finds that the balance of the ALJ's

analysis of the medical opinion evidence, including the opinions of Dr. Rush, is supported by substantial evidence. See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

Plaintiff argues that the ALJ should have re-contacted Dr. Rush for clarification of her opinions.  However, under the regulations in effect at the time of the ALJ decision, if the ALJ determined that the evidence was inconsistent or insufficient to permit her to determine if the claimant was disabled, the ALJ could have taken several different actions to enhance the record, including re-contacting the medical source. Jones v. Colvin, 2016 WL 2946466 at *3 (10th Cir. May 20. 2016). The regulation, effective March 26, 2012, states that when the evidence is inconsistent, or insufficient to determine if a claimant is disabled, the ALJ may take a number of options, one of which is that the ALJ "may" recontact the treating source. 20 C.F.R. 404.1520b(c); 77 FR 10651.  One of the other options allowed under the regulation was that the ALJ may ask the claimant to undergo a consultative examination.  The report from Dr. Rush was dated on March 20, 2013 (R. at 562).  The ALJ

subsequently obtained consultative examinations from Dr. Gerhart on June 28, 2013 (R. at 749-756) and from Dr. Bartlow on July 27, 2013 (R. at 762-777).  Therefore, the court finds that the ALJ did not err by failing to recontact Dr. Rush.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 7th day of September 2016, Topeka, Kansas.

s/Sam A. Crow<br>
Sam A. Crow, U.S. District Senior Judge